# Lay *v.* Postal Telegraph Cable Co.

*Damage for Mistake in Telegram.*

(Decided Feb. 29, 1911.   54 South. 529.)

1. *Dismissal and Non Suit; Exceptions; Sufficiency.*—Where the judgment entry recites that plaintiff takes a non suit with bill of exceptions on account of adverse rulings of the court on pleadings and evidence, it is sufficient to require a review of the questions ruled adversely.

2. *Evidence; Mental Condition.*—One suing for damages for a mistake in transmitting a telegram which led him to believe that his wife and baby were dying cannot testify what his mental condition on receipt of such telegram was.

3. *Same.*—Where one sues for mental anguish arising from a mistake in a telegram whereby he was led to believe that his wife and baby were dying, he can show that on returning home and before learning of the mistake he seemed to be distressed.

4. *Damages; Special; General.*—Special damages as distinguished from general damages are the natural but not necessary consequences of an act complained of.

[Lay v. Postal Telegraph Cable Co.]

5. *Telegraphs and Telephones;Damages; Pleading.*—Mental anguish resulting from a mistake in a telegram whereby the addressee was led to believe that his wife and baby were dying, constitutes special damages, and must be specially pleaded.

6. *Same; Mental Anglish.*—Where the telegram received for transmission announced that the wife and baby were well, an addressee of a telegram can recover for mental anguish suffered while led to the belief on account of mistake in the message that his wife and baby were dying.

7. *Appeal and Error; Record; Requisites; Striking Pleas.*—In order to review a motion to strike a pleading, the record proper should show a judgment, and the bill of exceptions should show the exception to such judgment.

8. *Same; Preparation.*—A motion to strike cannot be made part of the record proper by merely filing it with the clerk, but the court can cause its incorporation into the record by an order.

9. *Same.*—A motion is made part of the record where the judgment refers to it as having been refiled, and rendering judgment thereon.

APPEAL from Mobile Law and Equity Court.

Heard before Hon. SAFFOLD BERNEY.

Action by William T. Lay, against the Postal Telegraph Cable Company, for damages for mistake in the transmission of a message. Nonsuit by plaintiff on account of adverse ruling with bill of exceptions plaintiff and appeal. Reversed and remanded.

Webb, McAlpine & Brown, for appellant. The court erred in striking from the complaint claim for mental anguish. Under the pleadings, it was certainly recoverable in this action.—*W. U. T. Co. v. Crumpton*, 138 Ala. 632; *W. U. T. Co. v. Griffin,* 50 South. 31; *W. U. T. Co. v. Wilson,* 93 Ala. 34; *Blount v. W. U, T. Co.* 126 Ala. 105; 54 S. W. 627; 52 S. W. 632. The court erred in not permitting it to be shown what the condition of the plaintiff was as to distress, etc.—*W. U. T. Co. v. Heatchote,* 14 9 Ala. 623; *Echols v. Bates,* 29 Ala. 625; *W. U. T. Co. v. Manker,* 145 Ala, 418; 12 Enc. of Evi. 464; 109 S. W. 942; *B. R. L. & P. Co. v. Ruthledge,* 142 Ala. 195.

FITTS & LEIGH, for appellee. The rulings of the court on pleadings were not within the purview of the statute before its amendment in the last Code.—*Pritchett v. Sweeney,* 109 Ala. 653. Exceptions to the rulings on the motion should have been taken at the time, and the rulings thereon and the exceptions reserved should have been shown by bill of exceptions.—*W. U, T. Co. v. Ayres,* 131 Ala. 394; *W. U. T. Co. v. Croker,* 135 Ala. 492; *N. Ala. Ry. v. Countz,* 51 South. 939; *Champion v. C. of Ga.* 51 South. 562. It seems then that appellant cannot take anything by reason of the action of the court in granting the motion to strike parts of the complaint. Where there is a conflict between the recitals of the judgment entry, and the bill of exceptions, the judgment entry must control, and things required to be presented by bill of exceptions cannot be considered unless so presented.—*Brooks v. Hodges,* 101 Ala. 125; *Odom v. Ruthledge,* 94 Ala. 495; *National Bank v. Baker-Hill I. Co.,* 108 Ala. 635. With a portion of the complaint stricken out, plaintiff was not in position to show any mental anguish, as it was not within the issue. —*Lake v. Gaines* & Co. 75 Ala. 143; *McRae v. Harmon,* 98 Ala. 351; *Cotton v. Bradley,* 38 Ala. 509. In any event, the questions asked were illegal.—*Western U. v. Peagler,* 163 Ala. 38; *W. U. T. Co. v Northcutt,* 158 Ala. 540.

SAYRE, J. Plaintiff in the court below reserved for review in this court rulings upon the pleadings, and upon the admissibility of evidence, which drove him to a nonsuit. The judgment entry recites that "plaintiff takes a nonsuit with bill of exceptions on account of adverse rulings of the court on pleadings and evidence during the trial of the cause." In *Downs v. Minchew.* 30 Ala. 86, the recital was that "the plaintiff excepted to the ruling

of the court, and takes a nonsuit." The court held that the record established the fact that the decision below was the cause of the nonsuit, and that the appellant had excepted with a view to a revision by this court, and proceeded to a review of the questions reserved. That case followed a principle extracted from earlier cases, which were cited, and has itself been followed in *Laster v. Blackwell*, 128 Ala. 143, 30 South. 663. We are required, therefore, as for this objection, to consider the questions ruled adversely to the appellant.

Appellant sought to recover damages resulting from a mistake in a telegram sent to him by his agent. The complaint contained several counts in contract wherein it was shown that shortly before the occurrence in question plaintiff left home expecting that in a few days his wife would be delivered of a child. He made arrangements for telegraphic information as to the result. The telegram delivered to the defendant company for transmission read as follows: "To W. P. Lay, c/o Toomer Lbr. Co., Mahned, Miss. Mary and baby doing well. K. C. Cuthbert." As delivered to him the message read: "Mary and baby dieing. J. C. Cutsbert." The complaint claimed damages for that, in addition to time and money lost in leaving his business, and returning to his home as he would not have done otherwise (not including, however, the price paid for the transmission of the telegram), as a result of the telegram so received by him, "he was overcome with grief, was startled and shocked, and was made to suffer excruciating mental pain and anguish." January 22, 1910, defendant filed its motion to strike from each count of the complaint those words we have just quoted, assigning, as we will assume, every conceivable reason why they should be stricken. The record shows that on April 4,

1910, the court ordered and adjudged that "defendant's motion to strike portions of the complaint be and the same is hereby granted." For some reason, undisclosed, the motion was refiled June 18th, and on the same day the court ordered and adjudged that "defendant's motion as refiled to strike portions of the complaint be and the same is hereby granted." In each case the record proper shows that the plaintiff excepted. Upon the complaint as thus amended by the court's ruling, the parties went to trial. During the progress of the cause, plaintiff offered in various ways to show that he had suffered mental pain and anguish, and reserved exceptions to those rulings which sustained objections to the evidence thus offered. Some of these questions asked the plaintiff to state his mental condition upon receipt of the message. In any state of the record these questions called for incompetent evidence. *Western Union v. Cleveland*, 169 Ala. 131, 53 South. 80. One question, addressed to Miss Cuthbert, who appeared as a witness for plaintiff, asked her to state whether plaintiff, upon his return home—and before he learned that the message delivered to him was a mistake, as the circumstances indicated—seemed to be distressed. If the complaint at that time contained the averment in respect to plaintiff's anguish of mind, this testimony was competent. It has often been so ruled by this court. In *Western Union v. Henderson*, 89 Ala. 510, 7 South. 419, 18 Am. St. Rep. 148, it was held that "the natural utterances and expressions indicative of pleasure, displeasure, pain, or suffering are competent original evidence that may be received in proof of physical or mental state, whenever that state is a pertinent inquiry." In *Western Union v. Manker* 145 Ala. 418, 41 South. 850, a witness was permitted to show that she

saw the plaintiff crying. And so a witness may say that a person "looked frightened" (*Thornton v. State,* 113 Ala. 43, 21 South. 356, 59 Am. St. Rep. 97; where a number of cases are cited); "seemed to be suffering" (*S. & N. Ala. R. R. Co. v. McLendon,* 63 Ala. 266); "looked excited" (*Prince v. State,* 100 Ala. 144, 14 South. 409, 46 Am. St. Rep. 28). Indeed, our decisions to the same general effect have been so numerous that the ruling of the trial court is to be explained only upon the assumption that the complaint at the time of this ruling contained no allegation of mental suffering. Upon this assumption, however, all those rulings were free from error.

Appellant suggests that, since the allegations stricken stated a case for general damages, the rulings on the evidence cannot be justified on the ground that there was in the complaint at the time no averment of mental pain and anguish. In other words, the suggestion is that, so far as allegation circumscribed the introduction of proof the complaint meant as much after the motion to strike had been granted as it did before. "Special, as contradistinguished from general, damage, is that which is the natural, but not the necessary consequence of the act complained of." *Roberts v. Graham,* 6 Wall. 578, 18 L. Ed. 791. In *Sloss-Sheffield Company v. Dickinson,* 167, Ala. 211; 52 South. 594, the plaintiff sued in Code form claiming damages generally for an assault and battery. This court held that damages for mental suffering and humiliation could not be recovered unless alleged, following a dictum in *Irby v. Wilde,* 150 Ala. 402, 43 South. 574, where it was held that, because there may be a technical assault and battery without pain or anguish, such damages may not be recovered unless specially pleaded. Dissenting, Judge Mayfield and the writer

12—171.

here used this language: "General damages are such proximate damages as result in the usual course of things, and of which the defendant does not need to be specially informed. General damages are defined by the Supreme Court of Massachusetts as 'only such damages as any other person, as well as the plaintiff might, under the same circumstances, have sustained from the act set out in the declaration.' *Baldwin v. Western Railway Corp.*, 4 Gray (Mass.) 333. They are presumed to follow the wrong charged, though they may in fact be nominal only. Special damages are such as result proximately, but not ordinarly, from the wrong complained of. They are either superadded to general damages arising from an act injurious in itself, or are such as will arise from an act not actionable in itself, but injurious only in its consequences—such as really occur. Of a claim of such damages the defendant ought to be specially informed." It is not understood that the majority of the court controlling the decision in that case denied the general principle here stated, but only its application to the Code form as it had been previously construed. Nor is this language of the dissent reproduced with any purpose of calling attention to the difference of opinion in that case, but only to show that no opinion was there expressed by any one which can be cited here as furnishing an analogy for holding the damages here claimed for mental pain and anguish to be general rather than special. In this case no general damages are claimed. However anomalous may be the position of those courts which permit the recovery of damages for mental suffering in telegraph cases, and however much they may have found it necessary to define in order at once to maintain the doctrine and prevent its extension to all manner of telegraph cases, they have in decision limited the right of

recovery to cases in which information of sickness or death of near relatives was delayed or miscarried. As to the nature of the information committed to the telegraph company for transmission, the message itself speaks, and brings the consequences of a breach within the contemplation of the parties. But to bring the case within the rule adopted it is necessary also to allege the special circumstance of the relation between the parties in order to show the interest of the plaintiff in having the intelligence promptly and correctly transmitted and delivered. Such damages are special, and to be proved, must be alleged. It was, in effect, so ruled in *Western Union v. Westmoreland,* 151 Ala. 319, 44 South. 382. Appellant must therefore fall back upon those assignments which predicate error of those rulings by which the court struck the averments in reference to plaintiff's mental suffering.

The two judgment entries, which have already been mentioned, granted "defendant's motion as refiled to strike portions of the complaint," and recited exceptions reserved. But such exceptions are to be shown by bill of exceptions only. "In order to review a ruling of the court on a motion to strike pleading, the record proper of the trial court should show a judgment by the court, and exception to such judgments should be shown by bill of exceptions." *Gaston v. Marengo Improvement Co.* 139 Ala. 465, 36 South. 738. The exceptions noted in the judgment entries are not shown by the bill of exceptions and, for that reason, cannot avail the appellant. But, after the court had sustained objections to so much of plaintiff's evidence as was offered to show mental anguish suffered, the bill of exceptions recites that: "At this point, with leave of the court, plaintiff refiled his complaint, and the defendant refiled its motion to strike

portions of the complaint, and the court granted the said
motion of the defendant to strike, to which action of the
court plaintiff then and there duly excepted." One in-
sistence of the appellee is that in this state of the bill of
exceptions this court cannot know what the refiled com-
plaint contained, nor what was stricken. As for the
proposition that we cannot know what complaint was
refiled, it seems sufficiently clear that the complaint re-
filed was the complaint which had been filed origin-
ally. There was no occasion for a refiling of the com-
plaint as it had been amended by the court's ruling on
the motion to strike. That complaint was already on
the file, and we cannot reasonably attribute to the plain-
tiff the purpose to refile a complaint which then stood
upon the record as his complaint in the cause serving
every purpose which a complaint so framed could serve;
nor, what is of more consequence, can we suppose the
court intended to permit the useless incumbrance of its
records by a mere duplication of the complaint as it then
stood. As for the argument that we cannot know what
part of the complaint had been stricken because that
fact is not shown by the bill of exceptions nor by the
record proper of the court below except by reference to
the motion to strike which was not a part of that record,
we are of the opinion that, while the motion to strike
could not be made a part of the record of the court be-
low by merely filing it with the clerk, yet the court had
the power to cause its incorporation into the record by
an order to that effect, and when the court in its judg-
ment entry refers to a motion as having been refiled, and
records its judgment thereon, it would seem that there-
by the court made the motion a part of the record. The
bill of exceptions refers also to the motion which had
been refiled, and to that motion, shown here as a part of

the record proper, we look to find the meaning of the exception. In this way we learn that the court below struck from the complaint those words which averred plaintiff's mental pain and anguish upon being erroneously informed that Mary and the baby were dying.

We come, then, to the question of real importance, which is whether plaintiff, under the circumstances shown in his complaint, is entitled to recover for mental pain and anguish suffered by him during the time when, by defendant's blunder, he was led to believe that his wife and child were dying.

We are urged to follow the example set by the supreme Court of Indiana when, in *Western Union v. Ferguson,* 157 Ind. 37, 60 N. E. 679, it repudiated the doctrine which had then obtained for 12 years in that state, holding that damages for mental suffering were no more to be recovered for a breach of contract for the transmission of a telegraphic message than in the case of a breach of any other contract. We think our response need not be much labored. We may concede the anomaly of the postion, and perhaps any justification now offered would amount to nothing more than a reproduction of those considerations for it which have been advanced in scores of cases in this and other states. This is not the only anomaly to be found in the law. Our doctrine has been followed in many cases since its first announcement in *Western Union v. Henderson, supra,* decided in 1889, It has at least the merit that the defendant is put fairly upon notice of the nature of the damages which may ensue upon a breach of its contract, and is founded upon a policy which would not leave parties remediless in some cases of grave wrong done by persons, natural or artificial, whose only business is the transmission of intelligence. It has been considered, however, the part of

wisdom to restrict the allowance of damage for mental anguish in such case to near redatives and to occasions of sickness and death. *Western Union v. Westmoreland, supra.* It may be, as appellee intimates, that in the assessment of damages in cases where this doctrine is applied juries are at times unduly influenced by sympathy which the designing well know how to arouse, or open themselves to the suspicion of an unreasonable prejudice against great and wealthy corporations. But such cases have rarely fallen under our observation, and, in any event, are to be closely watched and controlled by an even-handed bench. We are inclined to travel yet a while in the way which has grown old with us—*super antiquas vias.*

Anticipating this conclusion perhaps—at least leaving no proper argument untried—appellant seeks to take this case out of the influence of the doctrine, as ordinarily announced, by referring to its peculiar facts. And the facts are peculiar. There was no death. The sickness was of a sort which is commonly considered to be, after its crisis is past without mishap, a subject of congratulation. The wife and child were doing as well as could be expected under the circumstances. Plaintiff was not kept away from them. He was hurried to them. But the defendant, in breach of its contract to carry news of good cheer, represented to the husband that his wife and child were dying. He suffered mental anguish, of course, though his suffering was short-lived. Ought the defendant to be heard to say that the relief incident to finding them well, like unto the joy of a woman after travail, liquidated altogether the apprehension which was founded on its failure to perform its contract? We think not. If such a case does not fall within the principle of our cases in which recovery for ment-

[Louisville & Nashville Railroad Co. v. Thomason.]

al suffering has been allowed, then the considerations which underlie those case have no weight whatever, and that line of cases had as well be abandoned. *Telegraph Company v. Odom,* 21 Tex. Civ. App. 537, 52 S. W. 632; *Telegraph Company v. Hines,* 22 Tex. Civ. App. 315, 54 S. W. 627. The case can be distinguished from them only by further refining, and to that we are not inclined.

We think error has been shown.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and SOMERVILLE, JJ., concur.